UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CONNIE ELIOSA,

                Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                Defendant.

Case No. 2:11-cv-00074-BHS-KLS

REPORT AND RECOMMENDATION

Noted for April 20, 2012

Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On May 3, 2006, plaintiff filed an application for SSI benefits, alleging disability as of November 1, 2001, due to problems with her neck, middle back and hands. See Administrative Record ("AR") 11, 128. Her application was denied upon initial administrative review and on reconsideration. See AR 11, 67, 75. A hearing was held before an administrative law judge ("ALJ") on July 6, 2009, at which plaintiff, represented by counsel, appeared and testified, as did

REPORT AND RECOMMENDATION - 1

a vocational expert. See AR 21-64.

On September 23, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 11-20. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on November 16, 2010, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 416.1481. On January 13, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1-#2, #4-#7. The administrative record was filed with the Court on June 14, 2011. See ECF #14. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in not finding her dizziness and ankle conditions to be severe impairments; (2) in discounting her credibility; (3) in evaluating the lay witness evidence in the record; and (4) assessing plaintiff's residual functional capacity. For the reasons set forth below, however, the undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision be affirmed.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F.

REPORT AND RECOMMENDATION - 2

Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I. The ALJ's Step Two Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

In this case, the ALJ found plaintiff had severe impairments consisting of: degenerative disc disease of the cervical and lumbar spine, status post cervical fusion surgery performed in

REPORT AND RECOMMENDATION - 3

1995; bilateral carpal tunnel syndrome; a right ankle fracture status post surgical repair, a depressive disorder; situational anxiety; and a history of substance abuse in current remission. See AR 13-14. Plaintiff argues the ALJ erred "in finding [her] dizziness and ankle conditions [to be] non-severe." ECF #22, p. 10. The ALJ, though, did not make any specific finding that these alleged impairments were not severe. See AR 13-14. Indeed, to the contrary, the ALJ found she had a severe ankle impairment. See AR 13.

Plaintiff also fails to explain how the ALJ erred at this step or point to any evidence in the record to support her argument here. See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered). In addition, the medical evidence in the record fails to show plaintiff experienced any significant work-related limitations related to her alleged dizziness. The undersigned thus finds no error here.

II.    The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148

REPORT AND RECOMMENDATION - 4

(9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284. The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

The ALJ in this case discounted plaintiff's credibility in part for the following reasons:

> The claimant's subjective complaints are not fully supported by the objective medical findings contained within the evidence of record. Medical records from January 2009 indicate that the claimant demonstrated normal range of motion in her upper extremities, showed no sign of respiratory distress, normal speech, gait, and memory, and exhibited normal affect, insight, and concentration (Ex. 27F, 4). Medical imaging of the claimant's cervical spine was negative for fracture, or spinal cord compression (Ex. 27F, 7). Such unremarkable findings suggest that the claimant's symptoms are not as disabling as alleged.
>
> Recent medical records reveal no objective basis to support the claimant's subjective complaints of being unable to hold on to items due to a left wrist injury. In March 2008, James Nolan, M.D., examined the claimant and determined that on "a purely physical basis" the claimant is capable of performing regular duty work with her left wrist (Ex. 23F, 6). Medical imaging of the claimant's left wrist was unremarkable (Ex. 23F, 4). Dr. Nolan

REPORT AND RECOMMENDATION - 5

> suggested that the claimant suffered from a psychogenic hand syndrome, which he described as a "non-physical" problem (Ex. 23F, 7). The undersigned gives partial weight to Dr. Nolan's assessment to the extent the physician finds no objective basis to support the claimant's subjective complaints. Dr. Nolan concedes, however, that non-physical problems are outside the realm of his expertise, and more recent evidence indicates that the claimant's psychological impairments are not as limiting as Dr. Nolan suggests.
>
> The claimant reported head, neck, and back pain in May 2008, which was subsequently resolved by pain medication (Ex. 25F, 1, 3). Despite her pain complaints, the claimant demonstrated a full range of motion about the shoulders and no tenderness in the low back. Reflexes and sensation remained intact (Ex. 25F, 2). These findings are consistent with subsequent medical imaging of the claimant's cervical spine, which showed solid fusion at C5-6 and significant spondylosis at C6-7 (Ex. 27F, 12). There was no evidence, however, of nerve root compression, spinal stenosis, or other symptoms generally associated with disabling back pain.

AR 16-17. A determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). The medical evidence noted by the ALJ above does contradict plaintiff's allegations of disabling pain and symptoms. Nor does plaintiff challenge or even address that evidence in objecting to the ALJ's findings here.

It is true that a claimant's pain testimony may not be rejected "*solely* because the degree of pain alleged is not supported by objective medical evidence." Orteza v. Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir.1991) (en banc)) (emphasis added); see also Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir.2001); Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989). The same is true with respect to a claimant's other subjective complaints. See Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir. 1995) (while Bunnell holding was couched in terms of subjective pain complaints, its reasoning extended to claimant's non-pain complaints as well).

The ALJ, however, provided other valid reasons for discounting plaintiff's credibility in

REPORT AND RECOMMENDATION - 6

this case, none of which plaintiff again specifically challenges. For example, the ALJ discounted her credibility in part on the following bases:

> The claimant's credibility is undermined by evidence reported in August 2009 that she was "significantly exaggerating" some symptoms associated with her mental impairments (Ex. 29F, 9). Clinical psychologist Robert Kruger, Psy.D., reported that the claimant's neuropsychological screening examinations were difficult to assess due to her poor effort and tendency to "amplify" or "exaggerate" her difficulties based on her results on the SIMS and TOMM validity tests, as well as "various discrepancies and inconsistencies" within the examinations themselves (Ex. 29F, 10). Upon examination, Dr. Kruger determined that the claimant demonstrated no difficulty understanding, remembering, or carrying out simple instructions (Ex. 29F, 12). While the claimant would likely have moderate difficulties understanding, remembering, or carrying out detailed instructions, she would have no difficulty making judgments on simple work-related decisions (Id.). Dr. Kruger also concluded that the claimant would have no difficulties related to appropriate social interaction in a workplace setting (Ex. 29F, 13). The undersigned gives great weight to Dr. Kruger's opinion as it is based upon review of all available medical records and personal examination.
>
> The claimant's credibility is further eroded by evidence of multiple criminal convictions, including a conviction for identity theft in 2004 (Ex. 29F, 6). When combined with the relatively benign objective findings set forth above, the undersigned is persuaded that the claimant's physical and mental conditions are not as disabling as she alleges.

AR 17-18. The ALJ further found in relevant part:

> The undersigned has also carefully considered the May 2006 Third Party Fucntion Report submitted by the claimant's friend Judy Moles, who reported that the claimant suffers weakness and pain that limits her physical functioning (Ex. 4E). Nevertheless, Ms. Miles reports that the claimant is very social and spends time with friends, attends church, and gets along very well with authority figures (Ex. 4E, 5, 7). This evidence contradicts the claimant's testimony that she is too frightened to leave her home. . . .

AR 17. As noted above, "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid" may be considered by the ALJ in discounting a claimant's credibility. <u>Smolen</u>, 80 F.3d at 1284. Accordingly, the undersigned finds the ALJ also did not err in finding plaintiff to

REPORT AND RECOMMENDATION - 7

be not fully credible for these reasons.

III.     The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

As she did in regard to her step two argument plaintiff merely asserts the ALJ erred in evaluating the lay witness evidence in the record, without providing any explanation or support for that assertion. See Carmickle, 533 F.3d at 1161 n.2; Paladin Associates., Inc., 328 F.3d at 1164; Kim, 154 F.3d at 1000. In addition, the undersigned finds the reasons the ALJ provided for rejecting that evidence are germane to those witness:

> . . . The undersigned gives partial weight to Ms. Moles' observations [reported in the Third Party Function Report noted above]; specifically, her assertions regarding the claimant's physical functioning are not supported by medical findings and the record as a whole.
>
> The undersigned has also considered the undated written statement submitted by the claimant's friend Barbara Rich, which states that the claimant gets "depressed and angry" and is afraid to go out by herself (Ex. 14E). This lay witness evidence is given little weight, as it is inconsistent with other evidence set forth above that the claimant's social functioning is only mildly limited by her mental impairments. As mentioned above, the claimant reported in August 2009 that she is sometimes able to go to the park, attend a barbecue with friends, and visit with friends in her home (Ex. 29F, 5). . . .

AR 17; see Lewis, 236 F.3d at 511 (ALJ may discount lay testimony if it conflicts with medical

REPORT AND RECOMMENDATION - 8

evidence); see also Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984); see also Carmickle, 533 F.3d at 1164 (ALJ's rejection of lay witness evidence because it was inconsistent with claimant's reported activities constituted reason was germane to lay witness).

IV. The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ assessed plaintiff with the residual functional capacity:

> **. . . to perform light work . . . that does not require the performance of more than simple, routine tasks or more than occasional contact with the general public due to the effects of her mental impairments, or more than occasional overhead reaching or climbing due to the effect of her alleged musculoskeletal pain.**

REPORT AND RECOMMENDATION - 9

AR 15 (emphasis in original).  Plaintiff argues the ALJ erred by not also including in the above RFC assessment a need for "fifteen to twenty minutes at a time for seven or more times a day to deal with her panic attacks and anxiety," a "need to lay down to relieve [her] symptoms" of back pain and a "sit/stand option." ECF #22, p. 9.  But other than her own self-reports and testimony – which, as discussed above, the ALJ properly discounted – plaintiff points to nothing in the record that supports such limitations, nor does the undersigned find any.  Thus, here too plaintiff has not shown any error on the ALJ's part.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ properly concluded plaintiff was not disabled.  Accordingly, the undersigned recommends as well that the Court affirm defendant's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  See Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 20, 2012**, as noted in the caption.

DATED this 30th day of March, 2012.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 10